UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

ISMAEL BIMBOW,
                          Defendant.

21-CR-48 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Ismael Bimbow was charged with conspiring to distribute and possess with intent to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl and mixtures and substances containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), and 846, and with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  (Dkt. No. 1.)

    Bimbow moves to suppress the physical evidence recovered from several residences and vehicles and requests an evidentiary hearing on whether the consent that law enforcement received to search his wife's apartment resulted from coercion and duress.  (Dkt. No. 23.).  In his reply brief, Bimbow also requests a *Franks* hearing to determine whether the affidavit supporting the search warrant for several vehicles and apartments contained materially false statements.  (Dkt. No. 29.)

**I.    Background**

    In fall 2020, law enforcement arrested an individual ("CS-1") on narcotics charges, and CS-1 began cooperating with law enforcement.  (Dkt. No. 24, Ex. A ¶ 7b.)  In relevant part, CS-1 informed law enforcement that he had known Bimbow for many years and that Bimbow was engaged in narcotics trafficking in New Jersey and New York.  (Dkt. No. 24, Ex. A ¶ 7(b).)  CS-1 also told law enforcement that Bimbow used firearms in connection to this narcotics

operation. (Dkt. No. 24, Ex. A ¶ 7(b).) Specifically, CS-1 informed law enforcement about several vehicles Bimbow used to transport narcotics, including a black Honda with a trap compartment installed by a man named George Gamble to store narcotics, and several residences Bimbow used to engage in narcotics trafficking. (Dkt. No. 24, Ex. A ¶¶ 11(a), (b).) CS-1 also provided law enforcement with Bimbow's cell phone number. (Dkt. No. 24, Ex. A ¶¶ 7(c), (d).)

Law enforcement attempted to corroborate CS-1's information in the following ways: (1) it looked up the registration information for the number provided by CS-1 and discovered that it was subscribed to Bimbow; (2) it looked into Bimbow's criminal history and found that he had several convictions for narcotics and firearms-related charges; (3) it reviewed the registration information for the vehicles CS-1 provided and found that one was registered to George Gamble and two were registered to women with whom Bimbow was in romantic relationships, according to CS-1; (4) it performed physical surveillance at the various residences identified by CS-1 and observed Bimbow at these locations; and (5) it installed tracking devices on the vehicles identified by CS-1 and observed that Bimbow moved among all four residences identified by CS-1. (Dkt. No. 24, Ex. A ¶¶ 7(c), 8(a)-(c), 11(a)-(t).)

On December 8, 2020, at around 12:45 p.m., the Government sent a search warrant application and affidavit completed by Special Agent Stephanie Ramirez to the United States Attorney's Office for the District of New Jersey. (Dkt. No. 24, Ex. B ¶ 6.) At 1:30 p.m., law enforcement observed Bimbow exit one of the subject residences carrying a bag and then get into the black Honda. (Dkt. No. 24, Ex. A ¶ 11(u).) Law enforcement then arrested Bimbow and searched the black Honda. (Dkt. No. 24, Ex. A ¶ 11(u).) In the car, law enforcement found a hidden trap compartment that contained a firearm, bundled currency, pills, and a brick of what appeared to be narcotics. (Dkt. No. 24, Ex. A ¶ 11(u).) Law enforcement also entered the

premises and observed in plain view bundles of suspected narcotics. (Dkt. No. 24, Ex. A ¶¶ 11(v), (w).)

The Government then revised the search warrant application and included information about Bimbow's arrest and the evidence seized from the Honda and the apartment. (Dkt. No. 24, Ex. B ¶ 8.) The affidavit stated that that affiant "was not relying on what officers saw inside Subject Premises-1 in seeking a search warrant of Subject Premises-1, and in an abundance of caution, ask[s] that the Court not rely on such information either." (Dkt. No. 24, Ex. A ¶ 11(w).) Later that afternoon, the Honorable Leda Dunn Wettre issued the warrants. (Dkt. No. 24, Ex. B ¶ 9.) Law enforcement executed the warrants and recovered a large quantity of narcotics, two firearms, an electronic money counter, and equipment used for weighing and packaging narcotics. (Dkt. No. 24, Ex. B ¶¶ 9, 10.) Nothing was recovered from Subject Premises-4. (Dkt. No. 24 at 10 n.4.)

Following the execution of the warrants, law enforcement identified an additional residence in New Jersey believed to be used by Bimbow and Devin Norflet, Bimbow's wife. This residence was identified primarily by physical surveillance of Bimbow, in which law enforcement observed him leaving the premises with a bag. (Dkt. No. 24, Ex. C ¶ 8(b).) On December 9, 2020, law enforcement observed a woman who looked like Norflet leaving the building, approached her, and explained that they were waiting on the execution of a warrant to search her apartment. (Dkt. No. 24, Ex. C ¶ 8(d).) Norflet explained that she had keys to the apartment and consented to law enforcement entering the apartment. (Dkt. No. 24, Ex. C ¶ 8(d).) Law enforcement conducted a search of the apartment and discovered a money counter, several stacks of currency, and a safe. (Dkt. No. 24, Ex. C ¶ 8(e).) Upon locating the currency and safe, law enforcement told Norflet that they would be seizing the items and money, and Norflet

responded that the safe was not hers and that she had only given consent to search the apartment, not to remove items. (Dkt. No. 24, Ex. C ¶ 8(f).) Agents then removed the money, the counter, and the safe, and obtained a search warrant for the safe. (Dkt. No. 24, Ex. C ¶ 8(g).) Law enforcement found approximately $80,000 inside the safe. (Dkt. No. 24 at 13.)

### III. Discussion

Bimbow advances several arguments in favor of his motion to suppress: (1) that law enforcement lacked probable cause to arrest; (2) that the evidence recovered from the black Honda should be suppressed because law enforcement did not obtain a warrant prior to the search and no exigent circumstance exception applies; (3) that the evidence from the vehicles and apartments should be suppressed because the warrants for these searches were derived from improper warrantless searches of the Honda and Bimbow's apartment; and (4) that the Court should hold a hearing to determine whether consent for the search of the Norflet apartment was the product of coercion and duress. The Court addresses each of these arguments in turn.

#### A. Probable Cause to Arrest

Bimbow first argues that law enforcement lacked probable cause to arrest. (Dkt. No. 23 at 11.) He contends that "none of the information obtained provided corroboration to an alleged informant's tip, nor was Defendant ever observed engaging in any illegal activity." (Dkt. No. 23 at 11.) The Government counters that there was sufficient probable cause to arrest, and even if there was not, law enforcement was independently justified in arresting Bimbow based on the fact that he had an outstanding arrest warrant from an unrelated case in Connecticut. (Dkt. No. 24 at 15-18.)

Probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a

4

person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983). "When an officer learns from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person." *United States v. Miller*, 265 F. App'x 5, 7 (2d Cir. 2008) (citing *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999)).

While Bimbow agrees that there is probable cause to arrest when an officer knows of an outstanding arrest warrant (*see* Dkt. No. 23 at 17), he contends that law enforcement only became aware of the Connecticut warrant following his arrest (Dkt. No. 23 at 17). This, however, is belied by the record. In the December 8, 2020 search warrant affidavit, Special Agent Ramirez stated that Bimbow had an "active warrant out of Connecticut for his arrest." (Dkt. No. 24, Ex. A ¶ 11(u).) And on December 7, 2020, Special Agent Ramirez had sent a screenshot of search results for Bimbow from a database that showed that Bimbow had an open arrest warrant in Connecticut. (Dkt. No. 24, Ex. B ¶ 4.).

The outstanding arrest warrant therefore established probable cause to arrest Bimbow.

### B.     Search of Black Honda

Bimbow next argues that the evidence recovered from the black Honda — the car he was in when he was arrested — should be suppressed because law enforcement did not have a warrant to search the vehicle and the search did not fall within any exigent circumstance exception. (Dkt. No. 23 at 12-18.)

Warrantless searches are "per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One of those exceptions is the "automobile exception," in which law enforcement "may conduct a warrantless search of a readily mobile motor vehicle if probable

cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). The determination of probable cause is a "flexible, all-things-considered approach" and requires examining "the totality of the circumstances." *Florida v. Harris*, 568 U.S. 237, 244 (2013).

There is sufficient evidence here to establish that the officers had probable cause to search the black Honda. CS-1 told law enforcement that Bimbow used the black Honda for his narcotics operation and explained that a man named George Gamble had designed a trap compartment in the vehicle to store narcotics and firearms. (Dkt. No. 24, Ex. A ¶¶ 11(a), (b).) This information was corroborated by GPS location data for Bimbow's phone, GPS tracking on the Honda, and physical surveillance. (Dkt. No. 24, Ex. A ¶¶ 7(c), 8(a)-(c), 11(a)-(t).) Further, law enforcement observed Bimbow getting into the Honda with a weighted bag that appeared to contain narcotics on the day of his arrest. (Dkt. No. 24, Ex. A ¶ 11(u).)

There was therefore a "fair probability" that evidence of a crime would be found in the black Honda. *Gaskin*, 364 F.3d at 457 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

### C. Search of Premises

Bimbow argues that the evidence recovered from the subject premises and subject vehicles for which law enforcement obtained a warrant to search should be suppressed because the warrants relied upon evidence that were the product of illegal searches — namely, the search of the black Honda and the search of his apartment shortly after he was arrested. (Dkt. No. 23 at 19-22.) But the December 8 affidavit completed by Special Agent Ramirez explicitly stated that the affiant was "not relying on what officers saw inside [the apartment], and, in an abundance of caution, ask[ed] that the Court not rely on such information either." (Dkt. No. 24, Ex. A ¶ 11(w).) Further, as the Court explained above, the search of the black Honda was lawful.

In Bimbow's reply in support of his motion to suppress, he also requests a *Franks* hearing. "[T]he Fourth Amendment entitles a defendant to a hearing if he or she makes a substantial preliminary showing that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quotation marks omitted). Bimbow points to five alleged misstatements by Special Agent Ramirez: (1) statements about the relationship among Bimbow, George Gamble, and Tiffany Gamble; (2) statements that Bimbow handed a weighted bag to two unidentified individuals; (3) statements about his apartment number, which Bimbow contends law enforcement did not know until after he was arrested; (4) statements that Bimbow was observed entering one of the subject premises while holding a bag and remained there overnight; and (5) statements about the amount of money seized from Bimbow at the time of his arrest. (Dkt. No. 29.)

The Court need not examine any of these statements individually because even if the Court found these to be untrue statements, there was still independent and sufficient probable cause to issue the warrant. Indeed, the affidavit provides detailed information from CS-1 about Bimbow's narcotics operations that was corroborated by surveillance, location tracking, and records searches. *See United States v. Martin*, 426 F.3d 68, 73-74 (2d Cir. 2005) (concluding that *Franks* hearing was not warranted where "there remains a residue of independent and law information sufficient to support probable cause").

### D.    Search of Norflet Apartment

Finally, Bimbow requests a hearing to determine if the search of Devin Norflet's apartment was the product of coercion and duress. (Dkt. No. 23 at 22-23.) He argues that the "tactics employed to cause its occupant, Defendant's wife, were inherently coercive and the

7

consent form signed was the clear product of duress." (Dkt. No. 23 at 22.) Bimbow points to the fact that Norflet struck the word "not" from a DEA consent form that originally stated, "I have not been threatened, nor forced in any way." (Dkt. No. 23 at 22; Dkt. No. 24, A ¶ 11(u).)

But as an initial matter, Bimbow has failed to establish a possessory interest in the Norflet apartment. Neither Norflet's affidavit nor Bimbow's affidavit, submitted with the surreply, asserts a possessory interest in the Norflet apartment. Indeed, Norflet consistently refers to the apartment as "my residence" (Dkt. No. 29, Ex. 3) and Bimbow never alleges that he also lives at this residence (Dkt. No. 29, Ex. 1). Bimbow therefore lacks standing to challenge the search of Norflet's apartment. *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."); *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (to challenge a search of an apartment, the defendant "bears the burden of proving . . . that he had a legitimate expectation of privacy").

## IV.   Conclusion

For the foregoing reasons, Bimbow's motion to suppress evidence is denied, and his request for an evidentiary hearing is denied.

The jury trial in this case has been scheduled to begin with jury selection on November 23, 2021. The parties are directed to confer regarding deadlines for pretrial disclosures and motions in limine and to submit a joint letter with proposed dates within 7 days after the date of this order.

To permit the parties to prepare for trial and to discuss any potential pretrial disposition, the Court hereby excludes time under the Speedy Trial Act through November 23, 2021, finding that the ends of justice outweigh the interests of the public and the defendant in a speedy trial.

SO ORDERED.

Dated: October 15, 2021
      New York, New York

                                                   J. PAUL OETKEN
                                                   United States District Judge