UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――
UNITED STATES OF AMERICA

              -v-

ISMAEL BIMBOW,
                         Defendant.
―――――――――――――――――――――――――――――

21-CR-48 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Ismael Bimbow was charged with conspiring to distribute and possess with intent to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl and mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), and 846, and with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Dkt. No. 1.)

      Bimbow now moves for reconsideration of the Court's October 15, 2021 Opinion & Order (Dkt. No. 30) denying Bimbow's motion to suppress evidence and request for a *Franks* hearing (Dkt. No. 57).

**I.    Background**

      The Court assumes familiarity with the factual background in this case as set forth in its previous opinion (*see* Dkt. No. 30). However, a brief description of the relevant procedural history is helpful.

      In August 2021, Bimbow filed a motion to suppress evidence and a request for a *Franks* hearing. (Dkt. No. 23). He argued that: (1) the police lacked probable cause to arrest him (Dkt. No. 23 at 11); (2) the evidence recovered from the black Honda — the car he was in when he was arrested — should be suppressed because law enforcement did not have a warrant to search the vehicle and the search did not fall within any exigent circumstance requirement (Dkt. No. 23

at 12–18); (3) the evidence recovered from the vehicles and apartments should be suppressed because the warrants for these searches were derived from improper warrantless searches of the Honda and Bimbow's apartment (Dkt. No. 23 at 19–22); (4) Bimbow is entitled to a *Franks* hearing based on alleged misstatements in the affidavit completed by Special Agent Ramirez in support of the warrants (Dkt. No. 29); and (5) the Court should hold a hearing to determine if consent for the search of the Norflet apartment was the product of coercion and duress (Dkt. No. 23 at 22–23).

The Court denied Bimbow's motions. (*See* Dkt. No. 30.) As relevant here, the Court concluded that the search of the black Honda was lawful under the automobile exception in part because CS-1 had told law enforcement that Bimbow used the Honda for his narcotics operation and a man named George Gamble had designed a trap compartment in the vehicle to store illegal objects, and this information had been corroborated by the police. (Dkt. No. 30 at 5–6.) It also held that the search of the subject premises and vehicles were not unlawful because the warrants relied upon evidence from the lawful search of the Honda and the warrant affidavit explicitly stated that it was not relying on what officers saw inside of Bimbow's apartment. (Dkt. No. 30 at 6.) Finally, the Court denied the request for a *Franks* hearing based on the alleged misstatements in the affidavit because "even if the Court found these to be untrue statements, there was still independent and sufficient probable cause to issue the warrant." (Dkt. No. 30 at 7.)

In December 2021, the government disclosed to Bimbow that it had met with CS-1, who confirmed all the information he had previously given about Bimbow's narcotics trafficking, except that CS-1 could not recall who installed the trap compartment in the Honda and did not recognize George Gamble in a photograph. (Dkt. No. 57-3 at 1.) Based on this information,

Bimbow requested that the Court reconsider his motion to suppress and request for a *Franks* hearing (Dkt. No. 44 at 7–8), and sought leave to file additional briefing related to the government's disclosure, which the Court granted during a February 2022 pretrial conference. (*See generally* Dkt. No. 55.)

## II.     Legal Standard

"Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions 'have traditionally been allowed within the Second Circuit.'" *United States v. Smith*, 105 F. Supp. 3d 255, 258 (W.D.N.Y. 2015) (quoting *United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006)).  District courts apply the applicable civil standard for motions for reconsideration in the criminal context.  *See id.*

A motion for reconsideration "may be granted only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (internal quotation marks omitted).  It is "well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted).  The rule must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court and to prevent the rule from being used as a substitute for appealing a final judgment." *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D 115, 117 (S.D.N.Y. 2007) (cleaned up).  It is therefore treated as an "extraordinary remed[y]" that is to be employed sparingly. *Fireman's Fund*, 10 F. Supp. 3d at 475.

**III.     Discussion**

Bimbow argues that he is entitled to a *Franks* hearing based on the government's disclosure about CS-1's lack of knowledge of George Gamble and other alleged misstatements in the warrant affidavits, the failure to include certain incriminating information about CS-1 in the affidavits, and the lack of corroborating evidence. Bimbow also contends that the Court failed to sufficiently address the legality of the initial warrantless search of Bimbow's apartment and that the evidence recovered from the trap compartment in the Honda must be suppressed in its entirety due to the staleness of CS-1's information. (*See* Dkt. No. 57.) The Court addresses each argument in turn.

**A.     *Franks* Hearing**

Bimbow first contends that the government's December 2021 disclosure provides additional support that Special Agent Ramirez, the affiant for the warrants at issue, included false information in the affidavits. (Dkt. No. 57 at 3–6.) He argues that this disclosure makes clear that "Gamble has no connection to law enforcement's investigation aside from S.A. Ramirez's blatant misrepresentations in order that she secure the within search warrants." (Dkt. No. 57 at 5.)

As the Court indicated in its previous opinion and in the pre-trial conference, even assuming that this statement is false, it does not move the needle in terms of the need for a *Franks* hearing. Critical here to the determination of whether a *Franks* hearing is warranted is that the allegedly false statements must be "necessary to the finding of probable cause." *Franks v. Delaware*, 434 U.S. 154, 156 (1978). What was material to the Court's determination that there was probable cause to issue the warrant was the robust corroboration of CS-1's information, including physical surveillance, location tracking, and records searches. (*See* Dkt.

No. 30 at 7.) And as the Court noted in the pre-trial conference, the relevant information provided by CS-1 regarding the trap compartment was not the *identity* of the person who installed the compartment but the fact that CS-1 told law enforcement that there was a trap compartment in the Honda used to store firearms and narcotics. (Dkt. No. 58 at 3.)

Bimbow again points to the alleged misstatements in the affidavits about Bimbow entering a building at which no evidence was seized, Bimbow giving a bag to two individuals, and the accuracy of the description of the bag that Bimbow was carrying shortly before he was arrested. (Dkt. No. 57 at 10–13.) But the Court already considered these statements in its previous opinion and concluded that there was no need to examine any of these statements individually because even if it found one of these statements to be untrue, there was sufficient independent probable cause to issue the warrant. (Dkt. No. 30 at 7.) "[M]erely repeat[ing] the arguments he previously made" and that the Court "already considered and rejected," *Gomez v. City of New York*, No. 15 Civ. 7524, 2017 WL 6542495, at *2 (S.D.N.Y. Dec. 21, 2017), is not sufficient to meet the high standard for a motion for reconsideration. *See also Tavarez v. United States*, No. 96 Crim. 895, 2005 WL 1500865, at *1 (S.D.N.Y. June 23, 2005) ("Petitioner's instant application rehashes old arguments that were not overlooked and do not warrant reconsideration.").

Bimbow's previously raised argument that the GPS location tracking does not show incriminating activity, and therefore does not corroborate CS-1's information, is similarly unavailing. Bimbow points to no case law, nor could he, suggesting that information can be considered corroborative only if it reveals incriminating information. The core question in determining whether there is probable cause is not whether the information shows incriminating activity, but whether the "information is reliable," which is demonstrated when the information

"is corroborated in material respects by independent evidence. If a substantial amount of information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable." *United States v. Wagner*, 989 F.2d 69, 72–73 (2d Cir. 1993). Here, CS-1 provided Bimbow's cellphone number and information about the residences and vehicles Bimbow used in his narcotics information, which law enforcement then corroborated through GPS tracking, records searches, and physical surveillance.

Bimbow lastly argues that the affidavits fail to disclose certain aspects of CS-1's criminal history. (Dkt. No. 57 at 14.) He contends that the only disclosure was that CS-1 was arrested on federal narcotics charges, but new evidence "reveals numerous indictable convictions for CS-1 arising from New Jersey Superior Courts, New York Criminal Court cases, and on the federal level, many of which have a direct bearing on CS-1's credibility." (Dkt. No. 57 at 14.)

Parties "may not use a motion for reconsideration to raise new arguments for the first time when they were free to raise them during the original briefing." *Luv N' Care, Ltd. V. Regent Baby Prods. Corp.*, 986 F. Supp. 2d 400, 412 (S.D.N.Y. 2013). The "new evidence" Bimbow relies on is from the public record (Dkt. No. 57 at 14), *not* information provided by the government and otherwise unavailable to defense. Bimbow provides no explanation as to why he could not have raised this argument during the original briefing; in fact, the government represents that Bimbow "has had access to [CS-1]'s publicly available criminal history record since well before filing his original motion to suppress." (Dkt. No. 58 at 5.) Therefore, this argument is rejected as untimely. In any event, there is no reason to believe that this information was intentionally withheld by the government, or that it would have affected the reviewing judge's determination of probable cause, particularly in light of the independent corroboration.

### B. Search of Bimbow's Apartment

Bimbow next contends that the Court failed to adequately address the legality of the warrantless search of Bimbow's apartment in its previous opinion. (Dkt. No. 57 at 18–21.) As Bimbow notes, the Court did in fact address this argument when it concluded that it need not address the legality of the warrantless search because Special Agent Ramirez did not rely "on what officers saw inside [the apartment], and in an abundance of caution, ask[ed] that the Court not rely on such information either." (Dkt. No. 30 at 6.) However, Bimbow argues that this conclusion is insufficient because "[i]t is implausible to believe that a magistrate, after learning of the numerous items recovered during the warrantless searches, would be able to disregard same when determining the existence of sufficient probable cause as it would be tantamount to Dorothy ignoring the Wizards unveiling by Toto in Oz." (Dkt. No. 57 at 19.)

Bimbow's argument does not suggest a "change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Fireman's Fund*, 10 F. Supp. 3d at 475, as is required. Bimbow does not point to any law that the Court overlooked or new evidence that the Court did not have available to it at the time of its original decision. Rather, Bimbow disagrees with the Court's determination that it need not address the legality of the warrantless search. Such a disagreement does not satisfy the high standard for granting a motion for reconsideration.

### C. Staleness of CS-1 Information

Finally, Bimbow contends that the information provided by CS-1 cannot form the basis for a finding of probable cause because it is stale and therefore unreliable. (Dkt. No. 57 at 21.) Bimbow argues that he only recently discovered that CS-1 had learned about the trap

7

compartment in the car in late 2019 or early 2020 from the government's disclosure in its January 4, 2022 letter motion for additional motions *in limine*. (*Id.*)

"A warrant may lack probable cause where the facts supporting criminal activity have grown stale by the time the warrant issues." *United States v. Guay*, 464 F. Supp. 3d 507, 514 (W.D.N.Y. 2020) (internal quotation marks omitted). The Second Circuit has identified two factors for determining staleness: the age of the facts alleged and the nature of the alleged criminal conduct. *See United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015). "Where the affidavit establishes a pattern of continuing criminal activity, such that there is reason to believe that the cited activity was probably not a one-time occurrence, the passage of time between the last alleged event and the warrant application is less significant." *Id.*

The government argues that the Court should disregard this argument because it should have been raised in Bimbow's original motion papers, though it does not point to anywhere in the affidavit or previous papers that indicate that Bimbow knew before the government's recent disclsoure that CS-1 saw the trap in late 2019 or early 2020. (Dkt. No. 58 at 6.) Nevertheless, the Court concludes that it need not address the issue of staleness. As discussed above, there was ample probable cause to search the Honda even putting aside the trap compartment information, including the corroboration of CS-1's information through GPS and physical surveillance.

## IV.   Conclusion

For the foregoing reasons, Bimbow's motion for reconsideration is denied.

The Clerk of Court is directed to close the motion at Docket Number 57.

SO ORDERED.

Dated: March 10, 2022
       New York, New York

_____
J. PAUL OETKEN
United States District Judge