UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-                                                    21-CR-48 (JPO)

ISMAEL BIMBOW,
                        Defendant.                     OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Defendant Ismael Bimbow was charged with conspiring to distribute and possess with intent to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl and mixtures and substances containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), and 846, and with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Following a jury trial in April 2022, Bimbow was convicted on both counts. Bimbow has now moved for judgment of acquittal or, in the alternative, for a new trial. For the reasons that follow, Bimbow's motion is denied.

I.      **Background**

The Court assumes familiarity with the factual background in this case as set forth in its previous opinions. (*See* Dkt. Nos. 30, 59.)

Trial against Bimbow began on April 4, 2022. On April 12, 2022, the jury found Bimbow guilty on both counts — conspiring to distribute fentanyl and heroin and using and carrying a firearm during and in relation to, or possessing a firearm in furtherance of, the narcotics conspiracy. (*See* Dkt. No. 74.)

On April 22, 2022, Bimbow moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  Alternatively, Bimbow moved for a new trial pursuant to Rule 33.  (*See* Dkt. No. 89.)

## II.    Rule 29 Motion

A motion for judgment of acquittal under Rule 29 may be granted only if "no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  When considering such a motion, the Court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (internal quotation marks omitted).  A defendant challenging a jury's guilty verdict "bears a heavy burden." *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (internal quotation marks omitted).

Bimbow argues that the evidence at trial was insufficient to support the jury's guilty verdict as to both the narcotics conspiracy count and the firearm count.  He also argues that the government failed to establish by a preponderance of the evidence that venue was proper in the Southern District of New York.  (*See* Dkt. No. 89.)  Each argument is addressed in turn.

### A.    Narcotics Conspiracy Count

Bimbow contends that the evidence presented by the government was insufficient to convict him of the narcotics conspiracy charged in Count I.  (Dkt. No. 89 at 2–6.)  He primarily argues that the jury should not have credited the testimony of Staff Coordinator Todd Riley or Special Agent James Lowndes, who both testified to conducting surveillance of Bimbow, including on the evening of November 23, 2020, when they observed him come out of a house in

New Jersey with a black bag and handed the bag to two individuals, who then placed the bag in a vehicle and left.  (Dkt. Nos. 77 at 111:7–115:6; at 344:1, 81 at 712:17–717:25.).  Bimbow similarly argues that the jury should not have credited the testimony of Cooperating Witness 1 ("CW-1"), because it was uncorroborated and inconsistent.  (Dkt. No. 89 at 5–7.)

It is well established that, when considering a Rule 29 motion, the Court is not entitled to determine the credibility of a witness, which is the province of the jury.  *See United States v. Cunningham*, 723 F.2d 217, 232 (2d Cir. 1983) ("[A] trial judge [is] not entitled to set [a] guilty verdict simply because he would have reached a different result if he had been the fact-finder."). The appropriate "place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury."  *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989) (internal quotation marks omitted).  Indeed, both law enforcement officers were cross-examined extensively about the November 23 surveillance, and CW-1 was cross-examined about his possible biases and motivations for testifying.  (*See, e.g.*, Dkt. Nos. 77 at 268:6–274:13; 79 at 325:16–333:19; 81 at 724:5–728:3; 79 at 499:4–519:22.)  The jury is responsible for deciding how these arguments bear on "the weight [it] should accord to the evidence."  *United States v. Truman*, 688 F.3d 129, 140 (2d Cir. 2012); *see also United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999) ("Any lack of corroboration of an accomplice's or co-conspirator's testimony goes merely to the weight of the evidence, not to its sufficiency.").

Bimbow also contends that much of the evidence introduced regarding the conspiracy was outside of the alleged time period charged in the indictment — "at least in or about November 2020, through in or about December 2020" (Dkt. No. 7 at 1) — and is therefore irrelevant to proving the existence of the conspiracy (Dkt. No. 89 at 6).   But the critical language in the indictment is "in or about."  (*See* Dkt. No. 7.)  Where this type of language is used, "the

government is not required to prove the exact date, if a date reasonably near is established . . . .
This is especially true where, as here, the exact time when an offense was committed is not an
essential element of the offense charged." *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d
Cir. 1987) (internal quotation marks omitted). And as the Court instructed the jury, "it does not
matter if the indictment charges that a specific act occurred on or about a certain date and the
evidence indicates that in fact it was another date. The law only requires a substantial similarity
between the date or date ranges alleged in the indictment, and the date or date ranges established
by the testimony or exhibits." (Dkt. No. 80 at 1207:1–7.) Thus, it is of no consequence that the
testimony of CW-1 about certain events and communications that the government introduced to
establish the existence of a narcotics conspiracy occurred a month or a couple months before the
time period alleged in the indictment.

Furthermore, as the government notes, there was ample evidence of the existence of the
narcotics conspiracy. This includes the large quantities of narcotics that Bimbow admittedly
trafficked, the testimony of CW-1, in which he claimed to have worked with Bimbow and in
which he related that Bimbow told him that he had two women to help him "bag up," and the
evidence of other co-conspirators, who helped secure residences for Bimbow's business. (*See*
Dkt. No. 90 at 13–15.)

**B.     Firearms Count**

Bimbow briefly argues that there was insufficient evidence to convict him on the firearms
count. (*See* Dkt. No. 89 at 6–7.) Specifically, he asserts that the evidence showed mere
possession of the firearms and that there was no evidence connecting the firearms to the
narcotics conspiracy, nor was there any evidence that the firearms had ever been used. (*Id.*)

The "requirement . . . that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) (internal quotation marks omitted). "That nexus is established where the firearm afforded some advantage (actual or potential, real or contingent) to the drug trafficking." *United States v. Willis*, 14 F. 4th 170, 184 (2d Cir. 2021) (internal quotation marks omitted). Under established Second Circuit case law, Section 924(c) "applies where the charged weapon is readily accessible to protect drugs, drug proceeds, or the dealer himself." *Willis*, 14 F. 4th at 184. The *Willis* court, for example, held that there was a sufficient nexus to uphold a 924(c) conviction where the guns were found near drugs and tools of the drug trade. *Id.* at 184–85.

The evidence at trial established that a firearm was found along with drugs and money in Bimbow's Black Honda. (*See* GX 202A.) Several other firearms were found in one of Bimbow's residences, including a firearm found under the passenger door of one of Bimbow's cars in his garage (Dkt. No. 77 at 172:5–18; GX 201G) and another on top a pile of items in Bimbow's garage (Dkt. No. 77 at 175:8–23; GX 201A). The evidence also established that there were drugs and drug paraphernalia in that apartment, and that these all belonged to Bimbow, as he admitted on the stand. (*See* Dkt. Nos. 77 at 148:10–152:14; 83 at 896:3–5.)

Here, several guns were found in the garage of Bimbow's apartment where he admittedly possessed drugs (*see* Dkt. No. 83 at 895:25–896:5) and where the evidence established that he was cutting and packaging drugs (Dkt. No. 77 at 148:10–152:14). Furthermore, a gun was found in a hidden compartment in his car, along with 117 glassines and currency. (Dkt. No. 83 at 919:5–9; GX 202A). While Bimbow testified that he possessed the firearms for other purposes (Dkt. No. 83 at 908:11–909:13), the jury was entitled to disbelieve any part of Bimbow's

testimony, *see United States v. Flores*, 945 F.3d 687, 711 (2d Cir. 2019). "[T]aking into account the totality of these circumstances, a jury could find beyond a reasonable doubt that the firearms were possessed" in furtherance of the drug trafficking crime. *United States v. Johnson*, 452 F. Supp. 3d 36 at 76 (S.D.N.Y. 2019). The Court therefore concludes that the evidence established at trial is sufficient to sustain Bimbow's conviction on the Section 924(c) count. Bimbow's motion for a judgment of acquittal on Count Two is denied.

It is also irrelevant that there is no evidence that the gun was ever used by Bimbow or was operable at the time of the crime. The Court properly instructed the jury that "[i]n considering the specific element of whether the defendant used or carried or possessed a firearm, it does not matter that the firearm was loaded or operable at the time of the crime." (Dkt. No. 87 at 1223:6–9.) The Court also properly instructed the jury that the government had to prove beyond a reasonable doubt not that Bimbow used the firearm, but that he possessed the firearm, meaning that he "either had physical possession of a firearm on his person or that he had dominion and control over the place where a firearm was located and had the power and intention to exercise control over a firearm." (Dkt. No. 87 at 1224:23–1225:1.)

## C.    Venue

Finally, Bimbow argues that the evidence presented by the government at trial failed to establish that venue was proper in this District, contending that the evidence is "pure speculation." (Dkt. No. 89 at 8.) Viewing the evidence in the light most favorable to the government and drawing all permissible inferences in its favor, as required, the Court disagrees.

Venue for a conspiracy charge lies in any district in which an act in furtherance of the charged conspiracy took place, as long as it was "reasonably foreseeable" to the defendant that the act would take place in that district. *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 68–70

(2d Cir. 2018).  "Because venue is not an element of the crime, the government must prove its propriety only by a preponderance of the evidence."  *Id.* at 71.

At trial, the government introduced evidence from which a rational jury could find that venue was established in this District.  First, CW-1 testified that he bought drug paraphernalia, including glassines, and other ingredients for his "cut" of heroin from a smoke shop on West 8th Street in lower Manhattan.  (Dkt. No. 79 at 416:4–14.)  The government also introduced evidence that in November 2020, Bimbow performed multiple searches for a smoke shop on West 8th Street (*see* GX 334) and around that time, he was in the vicinity of West 8th Street (GX 407, Dkt. No. 81 at 624:7–24).  Bimbow counters that CW-1's information was uncorroborated and that there was no evidence that law enforcement investigated this shop, undermining the credibility of CW-1.  (Dkt. No. 89 at 7.)  However, at this stage, "the evidence [must] be viewed in the light most favorable to the Government and all permissible inferences drawn in the Government's favor."  *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003).  This means that courts must accord "a high degree of deference . . . to the jury's evaluation of witness credibility."  *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).  That CW-1's testimony was uncorroborated by other evidence, including an investigation by law enforcement, did not require that the jury disbelieve his testimony.

Second, CW-1 testified that while he was talking to Bimbow at a club in New Jersey, Bimbow told him that "he had a guy on the table across the water, some girls bagging for him.  Across the water, meaning New York."  (Dkt. No. 79 at 477:18–478:7.)  Again, that CW-1 was a cooperating witness and his testimony was uncorroborated does not mean that the jury was required to discredit his testimony.  Indeed, the Court's jury instructions explained both that "the testimony of a cooperating witness may be sufficient evidence for a conviction if the jury

7

believes that the testimony establishes guilt beyond a reasonable doubt," *and* that "[i]t is also the case that cooperating witness is of such a nature that it must be scrutinized with great care." (Dkt. No. 87 at 1199:18–22.)

The case law in this Circuit is unclear as to whether courts may consider rebuttal evidence in deciding a Rule 29 motion.  In *United States v. Aulicino*, the Second Circuit held that when a defendant testifies, he loses "his right to have sufficiency assessed on the basis of the government's presentation alone" for purposes of a Rule 29 motion.  44 F.3d 1102, 1114 (2d Cir. 1995).  The court explained that "[t]he defendant's testimony may thus add weight to the government's case."  *Id.*  The situation here, however, is different because the evidence that most strongly supports venue is from the government's *rebuttal* case, not from Bimbow's testimony. The government introduced rebuttal evidence that contradicted Bimbow's testimony about whether Bimbow had ever been to Manhattan in connection with his drug trafficking. Specifically, it introduced evidence that in 2020, Bimbow entered Manhattan, texted someone saved as "W 8th" explaining that he would "be there" in thirty minutes, and ordered via text message "shirt logos" with names such as "Hot Sauce" and "Gorilla Pimp."  (*See* GX 608, 331L).  A DEA chemist then testified that those names were found stamped on the 50,000 glassines recovered from Bimbow's residence, suggesting that Bimbow had gone to the West 8th Street shop to purchase items for his drug business.  (GX 515; Dkt. No. 85 at 1032:22–1033:16.) Though this evidence is also sufficient to establish venue, the Court need not rely on it in deciding the Rule 29 motion, given the lack of clarity in Second Circuit precedent.  Based on the evidence established in the government's case-in-chief, the Court concludes that a rational trier of fact could have found that the government proved that venue was proper in this District by a

preponderance of the evidence.  Bimbow's motion for judgment of acquittal based on venue is

therefore denied.

### III.    Rule 33 Motion

Federal Rule of Criminal Procedure 33 provides:  "Upon a defendant's motion, the court

may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R.

Crim. P. 33(a).  "[B]efore ordering a new trial pursuant to Rule 33, a district court must find that

there is a real concern that an innocent person may have been convicted."  *United States v.

McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation marks omitted).  "The test is

whether it would be a manifest injustice to let the guilty verdict stand."  *United States v. Sanchez*,

969 F.2d 1409, 1414 (2d Cir. 1992) (internal quotation marks omitted).

Bimbow again argues that the testimony of Riley, Lowndes, and CW-1 should be

discounted in their entirety because they were entirely incredible.  (Dkt. No. 89 at 9.)  Rule 33

does permit this Court to "weigh the evidence and in so doing evaluate for itself the credibility of

the witnesses."  *United States v. Carpenter*, No. 18 Crim. 362, 2019 WL 3216619, at *3

(E.D.N.Y. Jul. 17, 2019) (internal quotation marks omitted).  However, a motion for a new trial

should be granted only where "testimony is patently incredible or defies physical realities."

*United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992).

Here, there is no basis to conclude that any of the three witnesses' testimony was so

incredible that the jury's credibility determination must be disturbed.  To the contrary, the

testimony of Riley and Lowndes was corroborated by one another's testimony, the recovery of a

large quantity of narcotics, several firearms, U.S. currency, and drug paraphernalia, as well as by

the testimony of Bimbow himself, who admitted that the drugs, firearms, and residences

belonged to him.  (*See, e.g.*, Dkt. Nos. 77 at 148:10–152:14; 83 at 896:3–5, 919:5–9).  And CW-

1's testimony was corroborated by the evidence found during the execution of the warrants (including a gas mask that CW-1 said he gave to Bimbow) and text messages between the two individuals.  (*See, e.g.*, Dkt. No. 79 at 455:4–456:9; GX 331F-1.)  Bimbow has therefore failed to articulate any reasonable basis for finding that the testimony of these three witnesses, taken as a whole, was patently incredible.

Bimbow also contends that his motion for a new trial should be granted because he was prohibited from eliciting testimony from the only two agents, Special Agents Stephanie Ramirez and Drew Greeley, who prepared reports in this case.  (Dkt. No. 89 at 9.)  Prior to trial, the Court explained to Bimbow that relitigating the motion to suppress the evidence recovered from the execution of the warrants and attacking the investigation's methods were improper bases for calling these agents.  (*See, e.g.*, Dkt. No. 75 at 5:13–22, 6:23–7:4.)  The government conceded that if he planned to "call [them] for the truth of what [they] saw to impeach someone else who testified, that could be proper" (Dkt. No. 75 at 8:14–15), and the Court then reserved decision on whether to allow the defense to call these witnesses (Dkt. No. 75 at 17:3–6).  Days into the trial, the Court repeated that no "proper basis" for calling Greeley and Ramirez had yet been provided, but again gave Bimbow another opportunity to articulate such a basis.  (*See* Dkt. No. 81 at 746:4–7 ("So I still haven't heard a valid basis.  So I need a letter or representation tomorrow morning at 9:30 with a proper basis for Ramirez and Greeley or else I'm not going to permit it.").)  But Bimbow did not submit such a letter or otherwise articulate a basis for calling the agents.  The Court denied his request to call these witnesses "based on the lack of any proper basis for calling [them]."  (Dkt. No. 83 at 835:6–14.)  Bimbow still has not provided a proper basis for seeking testimony from these witnesses.

Bimbow's Rule 33 motion is therefore denied.

**IV.**     **Conclusion**

For the foregoing reasons, Bimbow's motion for acquittal under Rule 29, or, in the

alternative, for a new trial under Rule 33, is denied.

The Clerk of Court is directed to close the motion at Docket Number 89.

SO ORDERED.

Dated: May 23, 2022
      New York, New York

                                              J. PAUL OETKEN
                                    United States District Judge